IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWAN RASHEED MCBRIDE, | 11-cv-494 |
| vs. | (Related to CR08-308) |
| UNITED STATES OF AMERICA | |

## OPINION

**I. Introduction.**

Pending before the Court is Petitioner Dawan R. McBride's *pro se* "Motion Requesting to Modify an Imposed Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(8) Predicated Another Modifying Statute (28 U.S.C. § 2255)" [ECF #61], ("Petitioner's § 2255 Motion") filed on April 14, 2011. On April 27, 2011, we sent Petitioner a "Miller" Notice and Order explaining that we were interpreting the pending motion as a motion to vacate, set aside or correct his sentence brought pursuant to 28 U.S.C. § 2255, giving him options with respect to withdrawing the motion, amending the motion, or having the motion ruled on as filed, and ordering Petitioner to inform us within thirty days of the date of the Notice and Order of which option he elected [ECF #63]. The Notice also informed Petitioner that "if the amendment is not filed within 120 days of the date that the Court receives notice of your intention to amend, the Court will rule on the petition in the form in which it was filed." Petitioner's "Response to Notice and Order" was filed on May 9, 2011 and explained that he wanted to file an amended brief [ECF #64]. Thus Petitioner had 120 days from May 9, 2011, or until September 6,

1

2011, to file an amended motion. As of today's date, Petitioner has not filed anything. Thus, consistent with our Notice to Petitioner, we have ruled on Petitioner's § 2255 Motion in the form in which it originally was filed.

For the reasons set forth below, Petitioner's § 2255 Motion is denied.

## II. Timeliness of Petitioner's § 2255 motion.

In order for this Court to reach the substance of Petitioner's 2255 motion, his motion must have been timely filed. 28 U.S.C. § 2255 states in pertinent part:

> [a] one year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final. . . .

28 U.S.C. § 2255(1). As explained by the appellate court in Kapral v. United States, 166 F.3d 565, 567 (3d Cir. 1999), "a 'judgment of conviction becomes final' within the meaning of 28 U.S.C. § 2255[(1)] on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires." Petitioner had 90 days from the date of the appellate court's order affirming this Court's judgment of conviction to file a timely petition for certiorari review.

Petitioner pled guilty on February 3, 2009 to violating 18 U.S.C. § 922(g)(1). He was sentenced on April 21, 2009 to 180 month's' imprisonment. Petitioner appealed the district court's judgment and on April 14, 2010, the United States Court of Appeals for the Third Circuit affirmed the judgment. Therefore, Petitioner's judgment of conviction became final for purposes of 28 U.S.C. § 2255 on or about July 14, 2010

and his § 2255 motion, filed on April 14, 2011 was timely filed under 28 U.S.C. § 2255(1).

III. **Standard of Review under 28 U.S.C. § 2255**.

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction. U.S. v. Cannistraro, 734 F. Supp. 1110, 1119 (D. N.J. 1989), aff'd, 919 F.2d 133 (3d Cir. 1990), cert. den'd, 500 U.S. 916 (1991). Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." U.S. v. Gordon, 979 F.Supp. 337, 339 (E.D. Pa. 1997) (citing Hill v. U.S., 368 U.S. 424, 428 (1962)).

The Court must consider the motion together with all the files, records, transcripts and correspondence relating to the judgment under attack. See 28 U.S.C. § 2255, Rule 4(b) of the Rules Governing Section 2255 Proceedings. A district court considering a § 2255 motion "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record,'" U.S. v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir.

3

1989)), and a court "abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." Booth, 432 F.3d at 546 (citing U.S. v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005). However, the final disposition of a § 2255 motion lies with the discretion of the trial judge, see Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), and a district court may summarily dismiss a §2255 motion where the motion, files, and records "show conclusively that the movant is not entitled to relief." U.S. v. Mason, 2008 WL 938784, 1 (E.D. Pa. 2008) (citing Forte, 865 F.2d at 62).

"Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal." U.S. v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir. 1993) (internal quotations omitted). Moreover, "if a petitioner has failed to raise an objection at the time of trial and has also failed to raise the issue on direct appeal, then collateral review of that claim is procedurally barred unless the petitioner is able to show 'cause' excusing his procedural default and 'actual prejudice' resulting from the alleged error or violation." Henry v. U.S., 913 F. Supp. 334, 335 (M.D. Pa. 1996), aff'd, 96 F.3d 1435 (3d Cir.1996); see also U.S. v. Essig, 10 F.3d 968, 979 (3d Cir.1993) (holding that the "cause and prejudice" standard set forth in U.S. v. Frady, 456 U.S. 152 (1982) "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed"). However, a petitioner need not demonstrate cause and prejudice when raising a claim of ineffective assistance of counsel for the first time in a collateral attack. Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690 (2003) (holding that an "ineffectiveness" claim can be brought

4

in a collateral proceeding under § 2255 regardless of whether the same issue could have been addressed on direct appeal); DeRewal, 10 F.3d at 104. Finally, the collateral remedy available to prisoners under § 2255 "does not encompass all claimed errors in conviction and sentencing." United States v. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979). "The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice'." Id. (quoting Hill, 368 U.S. at 428, 82 S.Ct. at 471)

IV. Legal Analysis.

    **A. Knowing and voluntary waiver issue.**

As an initial matter, the Plea Agreement signed by Petitioner on February 3, 2009 stated: "Dawan Rasheed McBride further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence."

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." U.S. v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001) (citing U.S. v. Mezzanatto, 513 U.S. 196, 201 (1995)). Such waivers are enforceable "provided they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." U.S. v. Mabry, 536 F.3d 231, 237 (3rd Cir. 2008), cert. den'd, 129 S.Ct. 2789 (2009) (citing Khattak, 273 F.3d at 561).

A court has "an independent obligation to conduct an evaluation of the validity of a collateral waiver." Id. at 238. Specifically, we must examine (1) the "knowing and

5

voluntary nature" of the waiver, based on what occurred and what the defendant contends, and (2) whether the enforcement of the waiver would work a "miscarriage of justice." Id. at 237. "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Id. at 237-238 (citing Khattak, 273 F.3d at 563).

With regard to whether the Petitioner's waiver of his right to file "a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence" was knowing and voluntary, we must, at a minimum, "review[] the terms of the plea agreement and change-of-plea colloquy and address[] their sufficiency." Id. at 239. This we have done, and after reviewing the terms of the plea agreement and the change of plea colloquy, we find that Petitioner's waiver of his right to file "a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence" was knowing and voluntary.

First, as stated above, the plea agreement, which Petitioner signed on February 3, 2009, clearly and unequivocally stated: "Dawan Rasheed McBride further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence." Second, the dialogue that occurred during the change of plea hearing indicates that the Petitioner knew what collateral appeal rights he was waiving and that he did so voluntarily. Specifically, the following discourse took place after

Petitioner was sworn in at the February 3, 2009 plea hearing. Petitioner testified that he was 31 years old and a high school graduate. Plea Hearing Transcript, p. 3. Petitioner stated that he felt physically and mentally "good" during the hearing. Id. at p. 4. He said he clearly understood exactly what was happening at the hearing. Id. Both attorneys stated that they did not have any doubt as to Petitioner's competency to plead. Id. The Court found Petitioner competent to plead. Id. When the Petitioner did not understand the Court's statement about the gun being forfeited, he asked the Court to explain it again. Id. at p. 8. The government attorney stated: "He also waives the right to file a motion to vacate sentence under Title 28, U.S. Code, Section 2255 attacking his conviction or sentence and the right to file any other collateral proceeding attacking his conviction or sentence." Id. at p. 14. The Court then told Petitioner that he "want[ed] to go over with you a little bit in more detail, Mr. McBride, that waiver of appeal rights." Id. at p. 15. Defense counsel then interjected and stated:

> I've always had a problem with advising my client about the Section 2255 waiver of appellate rights, the collateral, which one of them is a right to attack the sentence based upon ineffective assistance of counsel. There's always been somewhat of a conflict for me to advise my client to do that, realizing that it applies to me more than it would to him. So in your review of the plea, I would ask you if you would review that matter as well.

Id. The Court replied: "Right." Id. The Court then discussed with the Petitioner what rights he was giving up: "You understand, Mr. McBride, first of all, ordinarily you or the government would have the right to just file an appeal from any sentence that I might impose. But in this case, you're saying you won't have –you're waiving, giving up that normal right that you have to appeal, and as a result of that, ultimately, if the conviction is upheld, you'll get the credit for pleading guilty. Do you understand that?" Id. Petitioner

7

replied "Yes, sir." Id. The Court then explained: "So you're giving up your right to appeal, unless it's found that I made a mistake and that I should not [sic] have suppressed the gun, the evidence of the gun when they found the gun. Do you understand that?" Id. at p. 16. Petitioner answered: "Yes, sir. You're saying I retain the right to just challenge that suppression?" Id. The Court stated: "Exactly. That's the right you're keeping. You still have that right." Id. The Court continued: "To appeal, but you are giving up those other rights that you normally would have to appeal any kind of sentence that I make. Do you understand that?" Id. Petitioner answered "Yes, sir." Id. The Court then addressed some of the other limited circumstances pursuant to which either the Petitioner or the Government could appeal the court's sentence and asked the Petitioner if he understood. Id. at pp. 16-17. Petitioner said he did understand. Id. at p. 17. The Assistant United States Attorney ("AUSA") then stated: "[h]e's also giving up his collateral rights to attack his conviction, which is the post-conviction relief." Id. at p.17. The Court replied: "Right." Id. The AUSA then stated: "Which I think covers Mr. Miller's concerns about ineffective assistance of counsel." Defendant then interjected: "That's just basically saying once that a certain amount of time is given, after you looked it over and whatever that time is, that's what stands, unless, like you said, the suppression is granted and so forth, right?" Id. The Court responded "Right." Id. Petitioner then answered: "I understand that." Id. The Court then queried defense counsel: "Mr. Miller, have we covered everything do you think?" Id. Defense counsel replied: "I believe so, your Honor." Id. The Court answered: "I don't want any misunderstanding, that's all." Id. Defense counsel then added: "If I may, for the record, so that there is no

8

misunderstanding, Mr. McBride, I did review with you the post-conviction relief waiver as part of this conditional plea?" Id. at pp. 17-18. Petitioner answered: "Uh-huh." Id. at p. 18. The Court then stated: "I may have specifically said your Section 2255 rights; is that correct?" Id. The Petitioner again answered: "Uh-huh." Id. Defense counsel continued: "And we did discuss me being uncomfortable in advising you to waive as part of the collateral attacks your right to appeal based upon ineffective assistance of counsel; is that correct?" Id. Petitioner answered "Yes." Id. Defense counsel then asked: "Knowing that, what is your position with regard to that, my advice and your willingness to go forward with this matter?" Id. Petitioner then explained:

> Yes, we spoke about it. Like I said, I don't want to waste the Court's time. I don't want to waste your time. I know that basically I am guilty and I just want to be able to have that right [to contest the suppression ruling], and which you granted me and I thank you for it. Like I told my attorney, just, hopefully, not only in the eyes of God but maybe in your eyes, the Court may have mercy on me. But to make everybody's job easier, I considered to take the plea. That's all.

Id. The Court replied: "I think you understand." Id.

### B. Miscarriage of justice issue.

Having concluded that Petitioner's waiver of his right to bring a collateral appeal was knowing and voluntary, we must next consider whether the enforcement of the waiver "would work a miscarriage of justice in this case." Mabry, 536 F.3d at 239. In so considering, a court is to use a "common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Id. at 242-243. There is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice. Id. The United States

Court of Appeals for the Third Circuit has "endorsed the methodology of the Court of Appeals for the First Circuit," and instructed that we should consider "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result . . .'" Id. at 242-243 (quoting U.S. v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

Petitioner's sole argument in the § 2255 Motion is that the Court erred when it sentenced him as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C.§ 924(e), and it should modify his sentence accordingly:

> The honorable court never found by the trier of fact or admitted by petitioner in his guilty plea colloquy that any of petitioner's above prior convictions were for offenses punishable by ten years or more under the Pennsylvania statute. There are offenses involving the manufacture, distribution or possession with intent to distribute a particular controlled substance which violates Pennsylvania statue [sic.] and which are punishable by 10 years or more, but the determination is based on the weight of the controlled substance. Unless the facts found by this Honorable Court or admitted by petitioner in his guilty plea colloquy, make out that the prior convictions are punishable by ten tears [sic] or more pursuant to 35 P.S. 7508(3) (i) or 35 P.S. 780-113(a)(30) under the Pennsylvania statutes, the convictions may not be used to enhance the maximum period of petitioner's sentence under 18 U.S.C. 924(e)(2)(A)(ii).

Petitioner's Motion, pp. 4-5.

The Armed Career Criminal enhancement is found at 18 U.S.C. § 924(e), which provides in relevant part:

> (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for . . . a serious drug offense . . . committed on occasions different from one another, such person shall be fined under this title and imprisoned not

10

less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

(2) As used in this subsection--

(A) the term "serious drug offense" means--

(ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

Id.

At the sentencing hearing, the Court asked defense counsel: "Is there any question, Mr. Miller, about the accuracy of those earlier convictions in Common Pleas Court? You're satisfied that those actually did occur as stated in the presentence report?" Sentencing Hearing Transcript, p. 9 [ECF #50]. Defense counsel replied: "Yes, Your Honor." Id. Moreover, when Petitioner raised the same issue during the course of the sentencing hearing, the AUSA introduced, and the Court admitted into evidence Pennsylvania state court records which established by a preponderance of the evidence, that: (1) on or about September 24, 1998, Petitioner was convicted in state court of possession with intent to deliver a controlled substance (cocaine) in violation of 35 P.S. 780-113(a)(30); (2) on or about December 4, 2001, Petitioner was convicted of delivery of a controlled substance (cocaine) in violation of 35 P.S. 780-113 (a)(30); and (3) on or about January 30, 2004, Petitioner was convicted of delivery of a controlled substance (cocaine) in violation of 35 P.S. 780-113(a)(30). See Id. at p. 21, Errata re Hearing Memorandum of Sentencing held on 4/21/2009 as to Dawan Rasheed McBride [ECF #65].

11

Under each of the versions of 35 P.S. § 780-113 in effect at the time period relevant to Defendant's crimes, 35 P.S. § 780-113 (a)(30) stated:

> (a)  The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> (30)  Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

Id. Further, under each of the versions of 35 P.S. § 780-113 in effect at the time period relevant to Defendant's crimes, 35 P.S. § 780-113 (f) (1.1) stated:

> (f) Any person who violates clause (12), (14) or [clause] (30) of subsection (a) with respect to:
>
> (1.1). . . coca leaves and any salt, compound, derivative or preparation of coca leaves; any salt, compound, derivative or preparation of the preceding which is chemically equivalent or identical with any of these substances, except decocanized coca leaves or extract of coca leaves, which extracts do not contain cocaine or ecgonine. . . is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment *not exceeding ten years*, or to pay a fine not exceeding one hundred thousand dollars ($100,000), or both, or such larger amount as is sufficient to exhaust the assets utilized in and the profits obtained from the illegal manufacture or distribution of these substances.

35 P.S. § 780-113 (f) (1.1) (footnotes omitted) (emphasis added). Cocaine is commonly defined as a derivative of coca leaves. See U.S. v. Siak, 432F.Supp. 1035, 1036 (W.D. Pa. 1977) (taking judicial notice that cocaine is a coca leaves derivative).

Thus, contrary to Petitioner's argument, there was evidence admitted into the record at his sentencing hearing that supported the district court's finding that Petitioner had three

12

previous convictions for a "serious drug offense," i.e. for distributing or possessing with intent to distribute a controlled substance for which a maximum term of imprisonment of ten years or more is prescribed by law. As such, the court's sentence of Petitioner as an armed career criminal pursuant to 18 U.S.C. § 924(e) was not in error and the enforcement of Petitioner's waiver of his collateral rights would not work a miscarriage of justice in this case.

**V. Certificate of Appealability.**

The remaining issue before this Court is whether a certificate of appealability ("COA") should be issued with respect to Petitioner's § 2255 motion. A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000). We find that jurists of reason would not find our assessment of Petitioner's claims, constitutional or otherwise, to be either debatable or wrong. Therefore, the Court will deny a certificate of appealability.

**VI. Conclusion.**

This Court having held, for the reasons set forth above, that Petitioner knowingly and voluntarily waived his right to file a collateral appeal and that enforcement of said waiver would not work a miscarriage of justice in this case, Petitioner's "Motion Requesting to Modify an Imposed Term of Imprisonment Pursuant to 18 U.S.C. §3582(c)(1)(8) Predicated Another Modifying Statute (28 U.S.C. § 2255)" [ECF #61] is

denied. Moreover, a certificate of appealability will not be issued with respect to this motion. An appropriate order will follow.

October 6, 2011

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior District Court Judge

cc: Dawan R. McBride